NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GABRIELLE NIKOLIN, on behalf of herself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Hon. Garrett E. Brown, Jr. |
| v. | ) ) | Civil Action No. 10-1456 (GEB) |
| SAMSUNG ELECTRONICS AMERICA, INC., | ) ) | **MEMORANDUM OPINION** |
| Defendant. | ) ) | |

**BROWN, Chief Judge:**

This matter comes before the Court upon the motion to dismiss (Doc. No. 6) filed by Defendant Samsung Electronics America, Inc. Defendant seeks dismissal of Plaintiff's Complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). For the following reasons, the Court will grant Defendant's motion to dismiss.

I.     BACKGROUND

Plaintiff Gabrielle Nikolin ("Plaintiff"), a Texas resident, brings this action on behalf of herself and all other consumers who purchased an LED television from Defendant Samsung Electronics America, Inc. ("Samsung"), a New York corporation with its principal headquarters in New Jersey. (Compl. ¶ 12.) Plaintiff alleges that Samsung is misleading its customers by advertising and selling liquid crystal display screen ("LCD") televisions as light emitting diode ("LED") televisions. The following version of events assumes Plaintiff's allegations in the

1

Complaint to be true because Samsung moves pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

According to the Complaint, in early December 2009, Plaintiff and her husband decided to purchase a new television for Christmas after seeing an advertisement for Samsung's LED television.  Plaintiff visited Samsung's website and noted the three television categories listed there—plasma, LCD, and LED.  Plaintiff selected an LED television on the website, "clicked on a 'where to buy' button," and was referred to a Best Buy store near her home in Texas.  On December 18, 2009, Plaintiff went to that Best Buy store, "previewed Samsung's TV display" there, and purchased a Samsung LED television. (Compl. ¶ 50.)  Plaintiff did not consider any other televisions before making her purchase because the Samsung television was the television "she had decided to purchase prior to going to Best Buy." (*Id.*)  Plaintiff paid $1,999.99 plus tax for her new LED television.[1]  Plaintiff believed she was purchasing the latest and greatest in television technology.  On December 22, 2009, the new television was delivered to Plaintiff's home in Texas, whereupon Plaintiff noticed a "light coming from the sides of the screen." (Compl. ¶ 51.)  Plaintiff believed this display was inconsistent with the way an LED television functioned and discovered that her new television had an LCD display screen with LED back-lighting.  This configuration, Plaintiff states, meant that her television was not a "true" LED television. (Compl. ¶¶ 49-51.)

According to Plaintiff, high-definition, flat-screen televisions currently available on the market use either a plasma display screen or an LCD screen.  LCD technology is a "transmissive

---

[1] Plaintiff does not specify which model of Samsung LED television she purchased.  However, in her Complaint, Plaintiff compared two 55" models—an LCD television priced at $2,799.99 and an LED television priced at $3,499.99—to demonstrate the price differences between the two televisions. (Compl. ¶ 30.)

technology," meaning light from a source behind the screen passes through holes in the screen to form the images. "True LED" televisions are "emissive," on the other hand, meaning that no separate light source is needed to form the images. LED televisions emit light through the individual diodes that comprise the display screen. The images are formed through the combination of turning on and off or varying the intensity of the individual light sources. Plaintiff maintains that Samsung's LED televisions operate very differently from "true LED televisions" because they have an LCD screen and form images by using a separate light source instead of the light emitting diodes. (Compl. ¶¶ 3-5, 16, 19.)

Plaintiff asserts that the growing popularity of high-definition televisions among consumers forced manufacturers to cut prices. As a result, Plaintiff contends that Samsung "deceptively" named its product an LED television, as opposed to an LCD television, in order to induce consumers to believe they were purchasing, at a higher price, the latest in television technology. Plaintiff further alleges that Samsung is attempting to "justify" its higher prices not only by advertising its LED televisions as "different," but also with the claim that the LED television is more energy efficient. (Compl ¶¶ 22-26, 47-48.)

Plaintiff filed this putative class action suit on March 19, 2010. Plaintiff claims that Samsung's "strategy" of placing its LED television in a separate "category" from the LCD televisions on its website is deceptive and, therefore, violates the New Jersey Consumer Fraud Act ("NJCFA") § 56:8-2, and the consumer fraud statutes of other states.[2]

---

[2] Plaintiff also included an unjust enrichment claim in her Complaint. However, Plaintiff indicates in her opposition brief that she is withdrawing her unjust enrichment claim. (Pl.'s Br. at 3 n.1.) Accordingly, the Court will treat this claim as withdrawn.

**II.     DISCUSSION**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555 (citations omitted). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. At 1949 (quoting *Twombly*, 550 U.S. at 556). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. At 1949 (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

In the present case, Samsung contends that Plaintiff cannot sue under the NJCFA because this Court should find that Texas holds the most significant interest in this adjudication and, therefore, the Texas Deceptive Trade Practices Act ("DTPA") applies. (Def.'s Br. at 3.)  Beyond

4

the choice of law, Samsung contends that Plaintiff has not pled a claim under either the NJCFA or the DTPA.  (*Id.*)  Finally, Samsung contends that the allegations in the Complaint fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  (*Id.*)  Plaintiff responds that her NJCFA claim is proper given that Samsung's national headquarters is in New Jersey, and Samsung's misconduct primarily took place in New Jersey.  (Pl.'s Br. at 5.)  Further, Plaintiff responds that she has properly pled her consumer fraud claims with particularity, and that any choice of law analysis would be premature at this time.  (*Id.*)  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the parties are diverse, and Plaintiff alleges class damages in excess of $5 million.  (Compl. ¶¶ 1, 8, 12.)

    A.  *Choice of Law Analysis*

Courts in this Circuit have determined choice of law at the motion to dismiss stage.  *See, e.g.*, *Cooper v. Samsung Elec. Am., Inc.*, 374 F. App'x 250, 255 n.5 (3d Cir. 2010); *Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.*, No. 08-5380, 2010 WL 1424014, at *2 (D.N.J. April 8, 2010); *Knox v. Samsung Electronics America, Inc.*, No. 08-4308, 2009 WL 1810728, at *2 (D.N.J. June 25, 2009).  Conversely, courts in this District have, on occasion, declined to consider choice of law issues until the class certification stage.  *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004); *In re Hypodermic Products Antitrust Litig.*, No. 05-1602, 2007 WL 1959225, at *16 (D.N.J. June 29, 2007). However, in these instances, the cases involved multiple plaintiffs who filed complaints in multiple jurisdictions.  Here, Plaintiff stands as the sole plaintiff.  Thus, in the present case, a choice of law analysis is proper at this stage.  *See Cooper v. Samsung Elec. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *4 (D.N.J. Sept. 30, 2008), *aff'd*,

374 F. App'x 250, 254–55 (3d Cir. 2010) (applying most significant relationship test).

A federal court sitting in diversity jurisdiction must apply the forum state's choice of law rule. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Gen. Star Nat'l Ins. Co. v. Liberty Mutual Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992). New Jersey has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 142–43 (2008). New Jersey's choice of law analysis is a two-step process. First, a court must determine whether an actual conflict in law exists. *See Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006). If no actual conflict exists, "the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." *Id.* at 428. However, if the court finds that a conflict exists, the court must determine which jurisdiction has the "most significant relationship" to the claim. *Camp Jaycee*, 197 N.J. at 136. This second step of the most significant relationship test requires the court to weigh the factors set forth in the Restatement section corresponding to the plaintiff's cause of action. *See, e.g.*, *Nafar v. Hollywood Tanning Sys.*, 339 F. App'x 216, 220 (3d Cir. 2009) (citing *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 461–62 (D.N.J. 2009)); *Camp Jaycee*, 197 N.J. at 143–44.

Both parties agree that a conflict exists between New Jersey and Texas law. Further, courts have also noted a conflict between the NJCFA and other states' deceptive trade practices statutes. *See, e.g.*, *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 461 (D.N.J. 2009); *Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 247 (D.N.J. 2008); *Fink v. Ricoh Corp.*, 365 N.J. Super. 520, 584 (L. Div. 2003). Whereas the DTPA requires a plaintiff to demonstrate reliance on the allegedly fraudulent misrepresentations, the NJCFA does not require reliance. TEX. BUS. & COM.

CODE ANN. § 17.50(a)(1)(B) (Vernon 2010); *see Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607 (1997) (finding that reliance is not required under the NJCFA because liability results from "misrepresentations 'whether any person has in fact been misled, deceived, or damaged thereby'"). Additionally, under the DTPA, treble damages are not mandatory; however, under the NJCFA, treble damages are mandatory. TEX. BUS. & COM. CODE ANN. § 17.50(b)(1) (Vernon 2010) ("[T]he trier of fact may award not more than three times the amount of economic damages[.]"); N.J. STAT. ANN. § 56:8-19 ("In any action under this section the court shall . . . award threefold the damages sustained by any person in interest."). Therefore, this Court concludes that there is an actual conflict between the NJCFA and the DTPA and will proceed to the second step of the significant relationship analysis.

In determining which state holds the most significant relationship for consumer fraud claims, this Court considers the factors set forth in § 148 of the Restatement. *See, e.g.*, *Mercedes-Benz*, 257 F.R.D. at 65 (citing *Agostino*, 256 F.R.D. at 462). Under the circumstances of this case, § 148(2) instructs this Court to consider the following factors:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where the tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false

representations of the defendant.

Restatement (Second) of Conflict of Laws § 148.

Here, it is clear that both New Jersey and Texas have an interest in this matter: New Jersey has an interest in applying its consumer fraud laws to corporations headquartered in its jurisdiction, and Texas has an interest in protecting its residents by applying its own consumer fraud laws. However, the question here is not whether New Jersey has any interest in this matter at all; it is whether New Jersey has the most significant relationship with this dispute. This Court finds that it does not.

Accepting Plaintiff's allegations as true, Plaintiff is a resident of Texas; she received the information about Samsung's televisions in Texas; she purchased her television from a retail store in Texas; and, she used the television in Texas, where it appears the television is currently located. (Compl. ¶¶ 1, 49–51.) Although Plaintiff alleges that Samsung's headquarters are in New Jersey, the weight of this factor is diminished by Samsung's state of incorporation, which the parties agree is New York.[3] (Compl. ¶ 12; Def.'s Br. at 4.) In cases presenting similar consumer fraud claims, other courts in this District have held that mere allegations that the unlawful conduct emanated from New Jersey did not outweigh the substantial ties to plaintiffs' home states based on the other

---

[3] Plaintiff also relies on the "Terms of Use" page found on Samsung's website to argue that New Jersey law applies to her claims. In support of this argument, Plaintiff submits an affidavit and exhibit purporting to quote the "Terms of Use" governing the use of Samsung's website at the time Plaintiff consulted the website prior to purchasing her television in 2009. (Pl.'s Br. at 4.) Consideration of such evidentiary materials, which were not alleged in the Complaint, would be inappropriate at the motion to dismiss stage. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196. However, even if this Court could consider the "Terms of Use" at this stage, the Court does not see how they support Plaintiff's argument. By its express language, the "Terms of Use" "govern [the website visitor] while on this site," and in a subsection titled "Violation of Terms of This Site," they state that New Jersey law governs "[a]ny action related to these Terms." *See* http://www.samsung.com/us/common/legal.html (last visited on October 13, 2010). Plaintiff has not alleged that either she or Samsung violated the terms of Samsung's website, and Plaintiff has not alleged that her claims arise under the website's terms. Accordingly, the Court rejects Plaintiff's argument, presented for the first time in opposing Samsung's motion to dismiss, that the forum selection and choice-of-law clause of the "Terms of Use" applies to her claims.

factors under § 148(2). *See, e.g.*, *Cooper*, 2008 WL 4513924, at *6–7, *aff'd*, 374 F. App'x at 255 (applying law of consumer's home state where plaintiff, a resident of Arizona, learned of, purchased, and used a Samsung television in Arizona, and New Jersey's only tie to the matter was the fact that Samsung maintained its headquarters there); *Warma Witter Kreisler, Inc.*, 2010 WL 1424014, at *4 (concluding that "[a]n allegation that Samsung designed the product's operation in New Jersey does not outweigh the other, more significant, ties to Illinois," where plaintiff was an Illinois resident and had purchased and used the product in Illinois); *Knox*, 2009 WL 1810728, at *4 (applying Georgia's consumer fraud law where "the consumer contacts . . . in this matter all occurred in Georgia," despite Samsung's headquarters and alleged wrongdoing in New Jersey, and noting that "[a]lthough it is true that New Jersey seeks to prevent its corporations from defrauding out-of-state consumers, it is not clear . . . that New Jersey intended out-of-state consumers to engage in end runs around local law in order to avail themselves of collective and class remedies that those states deny.") (citation omitted); *but see In re Mercedes-Benz*, 257 F.R.D. at 68–69 (applying New Jersey law in a multi-district consumer fraud action involving several plaintiffs from different states). Under the circumstances of this case, this Court is persuaded by the majority of courts that have held that the location of the manufacturer's headquarters does not supersede the numerous contacts with the consumer's home state. Because of the numerous contacts with Texas in this case—Plaintiff resides in Texas, she purchased and used the television in Texas, she was exposed to the allegedly deceptive conduct in Texas, and the television seemingly still remains in Texas—this Court finds that Texas has the most significant relationship with the instant litigation. Accordingly, the Court will apply the DTPA to Plaintiff's consumer fraud claim.

B.  *Texas DTPA Consumer Fraud Claim*

The Texas DTPA "grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see also* TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (Vernon 2010).  The DTPA provides a non-exhaustive "laundry list" of examples of such "acts or practices."  TEX. BUS. & COM. CODE ANN. § 17.46(b) (Vernon 2010).  Plaintiff contends that Samsung's act of labeling its televisions as LED televisions constitutes both an "affirmative misrepresentation" and an "omission." (Compl. ¶ 60.)  Plaintiff's theory of deceptive acts would appear to fall under several provisions of the DTPA's list of deceptive conduct.  *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(5) and (7) (misrepresentations in advertising), and (24) (omissions tending to induce a consumer to enter into transaction she would not have entered into had the information been disclosed).

To state a claim under the DTPA, the plaintiff must show: "(1) the plaintiff is a consumer; (2) the defendant committed acts 'in connection with the purchase or lease of any goods or services'; (3) the defendant's acts were false, misleading or deceptive; and (4) the acts were a producing cause of plaintiff's injuries." *Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 842 (S.D. Tex. 2009) (quoting *Amstadt*, 919 S.W.2d at 649).  Moreover, to sustain a claim under the DTPA, the consumer must demonstrate that she relied upon the false, misleading, or deceptive act to her detriment.  TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)(B) (Vernon 2010); *see also Daugherty v. Jacobs*, 187 S.W.3d 607, 614 (Tex. App. 2006); *Fidelity & Guar. Life Ins. Co. v. Pina*, 165 S.W.3d 416, 423 (Tex. App. 2005) (stating that "establishing liability . . . under the [DTPA] requires that there be a finding that the consumer relied on the misrepresentation"); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 (Tex. 2002) (noting that "reliance is . . . not only

10

relevant to, but an element of proof of, plaintiffs' claims of . . . DTPA 'laundry-list' violations"). Finally, under the DTPA, a plaintiff is required to provide written notice of a claim to the defendant at least sixty (60) days before filing suit. *See* TEX. BUS. & COM. CODE ANN. § 17.505 (Vernon 2010). In order to avoid dismissal at this stage, Plaintiff is required to plead sufficient factual content to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 570. However, under the foregoing elements of the DTPA, Plaintiff has not met this burden. Accepting Plaintiff's allegations as true, the Court concludes that Plaintiff has not pled a proper claim under the DTPA.

Samsung contends, *inter alia*, that Plaintiff has not alleged reliance. Plaintiff does not dispute Samsung's contention that she has not alleged reliance, but instead argues that reliance is not required under the DTPA, citing *Weitzel v. Barnes*, 907 S.W.2d 472, 479-80 (Tex. 1995). (Pl.'s Br. at 40.) However, Plaintiff's dependence on this case is misplaced since the DTPA has been amended to include reliance as an element of a consumer fraud claim. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)(B) (Vernon 2010); *Daughtery*, 187 S.W.3d at 614.

With respect to the issue of reliance for both misrepresentations and omissions, the DTPA requires generally that a consumer rely on the false, misleading, or deceptive act "to the consumer's detriment." TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)(B) (Vernon 2010). More specifically, to state a claim under § 17.46(24), Plaintiff must demonstrate that she "would not have entered into the transaction had the information been disclosed." *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. 2006) (citing *Gill v. Boyd Distrib. Ctr.*, 64 S.W.3d 601, 604 (Tex. App. 2001)). Here, Plaintiff has not indicated in the Complaint that she would not have purchased this particular television had she known that Samsung's LED television did not incorporate an

LED screen. Rather, Plaintiff contends that this information "would have been material to any potential consumer's decision" to purchase a Samsung LED television. (Compl. ¶ 61.) This statement, standing alone, is not enough to support an inference that Plaintiff relied to her detriment upon Samsung's alleged deceptive conduct in choosing to purchase a Samsung LED television.

Further, Plaintiff's failure to plead reliance hinders Plaintiff's ability to plead an actual injury under the DTPA. Under the DTPA, "actual damages are required to state a cause of action." *McManus v. Sears, Roebuck and Co.*, No. 09-02-472, 2003 WL 22024238, at *4 (Tex. App. Aug. 28, 2003) (citing TEX. BUS. & COM. CODE ANN. § 17.50(a); *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002)). According to the Complaint, Plaintiff is seeking compensatory damages in "the amount of a refund of all monies acquired by reason of [Samsung's] sale of LCD TVs sold under the name Samsung LED TVs[.]" (Compl. ¶ 65.) However, elsewhere in her Complaint, Plaintiff criticizes the premium charged by Samsung for its LED television as compared to its LCD television. (Compl. ¶¶ 26, 48.) From these allegations, the Court cannot discern which damages Plaintiff seeks—purchase price or price differential. Plaintiff has not alleged that the Samsung LED television she purchased is defective or that she wishes to return the television. Theoretically, Plaintiff's claimed injury is that she "bargained for" a television incorporating an LED screen but received something different—a television with an LCD screen and LED backlighting. (*See* Pl.'s Br. at 36.) The DTPA permits a plaintiff to recover under a "benefit of the bargain" theory. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997); *Leyendecker & Assocs. v. Wechter*, No. C-2814, 1984 Tex. LEXIS 390 (July 11, 1984) (citing *Johnson v. Willis*, 596 S.W.2d 256, 263 (Tex. Civ. App.1980)). However,

12

Plaintiff does not allege that she would not have purchased the Samsung LED television had this information been disclosed, or even that she would have purchased another television from Samsung or another manufacturer.  Because Plaintiff does not allege that she would not have purchased this particular television but for Samsung's alleged acts, Plaintiff has not alleged sufficient facts to present a theory of injury under the DTPA.  Furthermore, to the extent that Plaintiff alleges Samsung engaged in fraudulent acts, Plaintiff's pleading deficiency is magnified by the fact that the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) applies to the DTPA.  *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (noting that "[i]t is well-established that [c]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b)") (internal quotations omitted); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) ("Claims alleging violations of the DTPA are subject to the requirements of Rule 9(b).").  Accordingly, because Plaintiff has not pled reliance or actual injury, the Court must grant Samsung's motion to dismiss.

      Plaintiff does not appear to seek leave to amend the Complaint.  However, the Third Circuit has repeatedly found that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment[.]" *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Id.* (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  Samsung requests that this Court dismiss Plaintiff's Complaint in its entirety and with prejudice.  (Def.'s Br. at 30.)  However, this Court is not convinced at this time that further amendment would be futile, in bad faith, or would cause undue

delay or prejudice. Therefore, under the Third Circuit's lenient standard, this Court will permit Plaintiff to amend her Complaint. Accordingly, Plaintiff will have 15 days to either amend the Complaint or declare her intention to stand on the Complaint in its current form. *See Borelli v. City of Reading*, 532 F.2d 950, 951–52 (3d Cir. 1976) (stating that "an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action. Only if the plaintiff cannot amend or declares his intention to stand on his complaint does the order become final and appealable").

However, the Court notes that Plaintiff appears not to have complied with the DTPA notice requirement. *See* TEX. BUS. & COM. CODE ANN. § 17.505(a) (Vernon 2010) (requiring written notice to defendant sixty days prior to filing a consumer fraud claim under the DTPA). Because this Court treats Plaintiff's consumer fraud claim as one arising under the DTPA, and because the Court will dismiss Plaintiff's DTPA claim without prejudice, the Court will require Plaintiff to comply with the DTPA's notice requirements prior to amending the Complaint. Pursuant to the DTPA's notice provision, the Court will abate the present matter until such time as Plaintiff has complied with the DTPA notice requirement. TEX. BUS. & COM. CODE ANN. § 17.505(d) ("The court shall abate the suit if the court . . . finds that the person is entitled to an abatement because notice was not provided as required by this section"). The 15-day period for amending the Complaint will begin once Plaintiff demonstrates compliance with the DTPA notice requirement.

### III.     CONCLUSION

For the aforementioned reasons, the Court will grant Samsung's motion and dismiss Plaintiff's Complaint without prejudice. This matter will be abated in accordance with the DTPA's notice provision, TEX. BUS. & COM. CODE ANN. § 17.505 (Vernon 2010). Once Plaintiff

has demonstrated compliance with the DTPA's notice provision, Plaintiff will have 15 days to amend the Complaint. An appropriate form of order accompanies this Memorandum Opinion.

Dated: October 18, 2010

                                                  /s/ Garrett E. Brown, Jr.
                                        GARRETT E. BROWN, JR., U.S.D.J.